United States District Court
Southern District of Texas
**ENTERED**
September 28, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RANDY W. RANDEL, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-2883 |
| | § | |
| TRAVELERS LLOYDS OF TEXAS | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Pending before the Court is the defendant's, Travelers Lloyds of Texas Insurance Company ("Travelers"), motion for summary judgment.  (Dkt. No. 23).  The plaintiffs, Randy W. Randel and Debra B. Randel, have filed a response in opposition to Travelers' motion for summary judgment (Dkt. No. 24) and Travelers has filed a reply (Dkt. No. 25).  After having carefully considered the motion, response, reply, the undisputed facts, the record, and the applicable law, the Court determines that Travelers' motion for summary judgment should be **GRANTED**.

### II.    FACTUAL BACKGROUND

This case arises out of an insurance dispute concerning the plaintiffs' claim for damages to their residential property arising from a fire in the property.  The plaintiffs, who are Texas residents, own a homeowners insurance policy, policy No. 9805316356761 (the "Policy"), issued by Travelers, insuring certain real property located at 14811 Stellas Point Ct, Texas 77396-4097 (the "Property") for the policy period beginning November 25, 2016 through November 25, 2017. The Policy contains the following relevant coverage limits: property coverage in the amount of $371,000 for the dwelling and $37,100 for other structures, and loss of use ("additional living

expense" or "ALE") coverage[1] in the amount of $37,100.[2] The Policy has a $3,710 deductible for all perils other than wind or hail.

On July 5, 2017, the plaintiffs filed a claim with Travelers, reporting that the Property had sustained damage as the result of a fire on or about July 4, 2017, originating in the plaintiffs' garage.  On July 5, Travelers' claims adjuster Victor McKnight performed an initial inspection of the Property, along with a representative from Blackmon Mooring, the company initially hired by the plaintiffs to perform cleaning, repairs, and demolition of the Property. That same day, McKnight adjusted the loss, denoting fire, heat, and water damage to the walls and ceiling of the garage and other rooms within the Property.

Between July 13 and 24, Blackmon Mooring and its agents removed damaged drywall, flooring, and insulation from inside the Property. Sometime between July 26 and August 7, 2017,[3] Blackmon Mooring notified Travelers that Mrs. Randel had instructed Blackmon Mooring to cease work at the Property immediately and to leave the location. During this period, the plaintiffs' adjuster, Key Commercial Consultants ("KCC"), notified Travelers that KCC would be representing the plaintiffs in connection with their insurance claim.

On August 4, 2017, Travelers advised Mrs. Randel that the building damage estimate would also be completed the following week. On August 7, 2017, Travelers issued correspondence

---

[1] The Policy's "loss of use" provision covers "additional living expense, meaning any necessary and reasonable increase in living expense [the insured] incur[s] so that [the insured's] household can maintain its normal standard of living."

[2] The Policy also provides for personal property coverage. However, the plaintiffs' claims are premised only on Travelers' allegedly wrongful denial and/or underpayment of building damage and loss of use benefits. The disposition of this matter therefore need not address any payments related to the Policy's personal property provisions.

[3] There is a discrepancy in the summary judgment record as to whether Travelers learned of Blackmon Mooring's dismissal on July 26, 2017 or August 7, 2017. The plaintiffs do not dispute, however, that at some point during this period Mrs. Randel instructed Blackmon Mooring to cease work at the Property immediately and to leave the location with its crew.

to KCC acknowledging KCC's letter of representation, providing a copy of the Policy and requesting any available documentation that supports additional damages claims.

On August 11, 2017, Travelers completed a fire damage estimate for the Property based on a $179,232.16 replacement cost value, which would result in a claim payment of $126,720.86 after applying the deductible and depreciation (actual cash value). Travelers provided the estimate to the plaintiffs and KCC on or about August 22, 2017, and issued the actual cash value payment on August 25, 2017. Travelers also made loss of use payments to the plaintiffs on October 19, 2017 ($13,868.01), February 8, 2018 ($2,644.58), and May 11, 2018 ($7,933.74), for the period of July 4, 2017 through March 16, 2018.

Over the following two months, Travelers sent KCC three requests for additional documentation regarding the building damage. On January 31, 2018, Travelers received from KCC a smoke damage report and damage estimate for the Property totaling $499,448.69. The following day, Travelers requested a re-inspection of the Property, which occurred on February 20, 2018. On February 13, 2018, Travelers agreed to extend the plaintiffs' long-term lease, based on loss of use, to April 16, 2018, after having declined to extend the lease on January 8, 2018.

On February 20, 2018, after the re-inspection, Travelers issued correspondence to KCC stating that it would not make any further payments in connection with damage to the plaintiffs' dwelling because Travelers could not account for any damages that occurred following the dismissal of Blackmon Mooring. Travelers noted that during the re-inspection it found that the repairs to the Property had stopped after Blackmon Mooring was dismissed and that no further actions had been taken to protect, clean, or repair the Property. Travelers referred, in its correspondence, to a provision of the Policy titled "Duties After Loss," which stated that "[i]n case of a loss to cover property caused by a peril insured against," the insured had a duty to "protect the

property from further damage" and "make reasonable and necessary repairs to protect the property." Travelers stated that for this reason it would not extend loss of use benefits to the plaintiffs any further.

On February 24, 2018, the plaintiffs invoked the Policy's appraisal provision. On March 8, 2018, Travelers issued a response denying the request for appraisal, stating that there was no covered damage to appraise. In its March 8 correspondence Travelers stated: "We do not waive any rights, including our right to deny coverage for any other valid reason under the policy or at law."

On March 22, 2018, the plaintiffs filed suit against Travelers in the 281st Judicial District Court of Harris County, Texas, seeking an order compelling Travelers to proceed to appraisal.  In its answer filed May 7, 2018, Travelers agreed to participate in the appraisal process. The parties and their adjusters re-inspected the Property for the third time on July 17, 2018. The Plaintiffs' counsel received Travelers' expert reports on October 4, 2018 and October 16, 2018. Travelers' expert provided her report to the Plaintiffs' counsel on December 5, 2018. Mediation, scheduled for December 6, 2018, was unsuccessful.  The Plaintiffs filed the instant lawsuit on July 3, 2019, in the 295th Judicial District Court of Harris County, Texas.[4] On August 5, 2019, Travelers timely removed the action to this Court on the basis of diversity jurisdiction.[5]

On September 10, 2019, the umpire and the plaintiffs' appraiser signed an appraisal award, which set the replacement cost value of the loss for the dwelling at $367,956.76 and the actual cost value at $317,030.70. The plaintiffs' loss of use claim was not submitted for apprais.l. On September 17, 2020, Travelers issued an appraisal award payment of $164,435.23 for the dwelling

---

[4] On February 6, 2019, the 281st District Court entered an order non-suiting without prejudice the plaintiffs' initial petition for declaratory judgment.

[5] Travelers' removal is timely, as it was served with the plaintiffs' Original Petition on July 9, 2019.

loss, after appropriate deductions. Following the plaintiffs' submission of depreciation information, Travelers made three additional dwelling payments—on October 21, 2019 ($7,468.71), November 15, 2019 ($13,550.59), and December 10, 2019 ($25,114.89). Travelers made a final loss of use payment of $22,210.89 on January 23, 2020, after receiving additional documentation from the plaintiffs on January 15, 2020. As relevant here, Travelers' total payments as of the date of their summary judgment motion amount to $359,454.89 in dwelling payments and $46,657.22 in loss of use payments.

The plaintiffs allege claims against Travelers for breach of contract, breach of the common law duty of good faith and fair dealing, and violations of Chapters 541 and 542 of the Texas Insurance Code. Travelers now moves for a summary judgment on the plaintiffs' claims.

## III.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the

record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008). If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little*, 37 F.3d at 1075. The nonmovant must then "'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)).  It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted).  All "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).  Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380).  Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## IV.   ANALYSIS AND DISCUSSION

### A.   The Plaintiffs' Breach of Contract Claim

The Plaintiffs assert a breach of contract claim against Travelers, alleging that Travelers failed to adequately compensate the plaintiffs under the terms of the Policy. Specifically, the plaintiffs maintain that Travelers breached the terms of the Policy by wrongfully denying and/or underpaying the plaintiffs for damage to the Property and for additional living expenses. Travelers moves for judgment, as a matter of law, on the plaintiffs' breach of contract claim, asserting that the plaintiffs' acceptance of the appraisal award payments estops them from pursuing their claim.

Having pleaded estoppel as an affirmative defense to the plaintiffs' breach of contract claim, Travelers has the burden to prove the defense at the summary judgment stage. *Crescent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994). "Texas courts have long held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award." *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004) (citing *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ)). "Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].'" *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, No. 11-20221, 2012 WL 181413, at *2 (5th Cir. Jan. 24, 2012) (quoting *Franco*, 154 S.W.3d at 787). "By

payment of the full amount of an appraisal award, the insurer 'complie[s] with every requirement of the contract, [and] it cannot be found to be in breach.'" *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 845 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (quoting *v. State Farm Lloyd's*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi 2004, no pet.)) (other citations omitted).

Here, there is no evidence raising a genuine issue of material fact as to a ground for setting aside the appraisal award. The plaintiffs have also failed to introduce evidence indicating that they have not been adequately compensated.  Thus, the plaintiffs, having accepted payment based on the appraisal award, are estopped from pursuing their breach of contract claim.  *See Hurst*, 523 S.W.3d at 845 ("Generally, tender of the full amount owed pursuant to the conditions of an appraisal clause is all that is required to estop the insured from raising a breach of contract claim."). The plaintiffs do not contest that they have received $359,454.89 in dwelling payments. Nor do they argue that Travelers' dwelling payments do not satisfy the appraisal award. Instead, they seek to recover damages simply because Travelers initially denied coverage beyond the pre-appraisal payment.

The plaintiffs first seek to avoid estoppel by arguing that their breach of contract claim is premised on Travelers' denial of additional coverage rather than on Travelers' valuation of the damage. Yet, the controlling case law makes no such distinction. *See Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 129 (Tex. 2019), reh'g denied (Dec. 13, 2019) (holding that the insured's acceptance of the subsequent appraisal award barred the insured's breach of contract claim, where the insurer had initially denied a hail damage claim on the basis that the majority of the damage estimate was not caused by hail and thus was not covered by the policy). Travelers denied the plaintiffs' additional damage because the damage claimed was caused by the plaintiffs' failure to

mitigate their damages. Once they accepted the appraisal award, all contractual claims ended. *Ortiz*, 589 S.W.3d at 129; *Scalise v. Travelers Texas Lloyds*, No. 7:13–CV–178, 2013 WL 6835248, at *5 (S.D. Tex. Dec. 20, 2013).

The plaintiffs argue, alternatively, that Travelers waived its estoppel defense by denying coverage on February 20, 2018, and then by refusing to proceed to appraisal on March 8, 2018. This conduct does not, alone, establish a waiver of the right to invoke the Policy's appraisal provision. *In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 410 (Tex. 2011). This Court must also consider the Policy's language and the surrounding circumstances to determine whether Travelers "intentionally relinquished its appraisal rights or engaged in intentional conduct inconsistent with claiming these rights." *Pounds v. Liberty Lloyds Tex. Ins. Co.*, 528 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2017, no pet.). *See also Ford v. United Prop. & Cas. Ins. Co.*, slip op. at 2, 2019 WL 1243871 (S.D. Tex. Mar. 18, 2019) (citing *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)).

Moreover, the Policy expressly states that "[n]o provision of this policy may be waived unless the terms of this policy allow the provision to be waived." Significantly, Travelers expressly reserved all of its rights under the Policy, including the right to an appraisal. There is no evidence of a waiver.

Finally, the plaintiffs argue that because their loss of use benefits were not submitted to appraisal, the plaintiffs are not precluded from asserting a breach of contract claim premised specifically on Travelers' denial or underpayment of these benefits. Such a claim cannot survive summary judgment, since the plaintiffs have not pointed to any evidence in the record indicating that Travelers' loss of use payments, totaling $46,657.22, did not fully compensate plaintiffs for

their additional living expenses. Accordingly, because the plaintiffs accepted a timely payment of a binding appraisal award, summary judgment is warranted.

**B.      The Plaintiffs' Extra-Contractual Claims**

In addition to their breach of contract claim, the plaintiffs assert claims against Travelers for common-law and statutory bad faith and for a violation of the prompt payment provisions of the Texas Insurance Code.

**1.      The Plaintiffs' Bad Faith Claims**

Travelers maintains that it is entitled to a summary judgment on the plaintiffs' extra-contractual claims for bad faith because the plaintiffs have no right to additional policy benefits and have not raised a genuine issue of material fact as to the existence of an independent injury, apart from the policy benefits already received. This Court agrees. Under Texas common law, insureds may assert a tort cause of action against insurers that fail to deal fairly and in good faith with them. *Twin City Fire Ins. Co. v. Davis*, 904 S.W.663, 666 (Tex. 1995). The Texas Insurance Code additionally grants an insured a private right of action against an insurer that engages in certain "discriminatory, unfair, deceptive, or bad-faith practices, and it permits insureds to recover 'actual damages . . . caused by' those practices, court costs, and attorney's fees, plus treble damages if the insurer 'knowingly' commits the prohibited act." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (citing Tex. Ins. Code §§ 541.151, 541.152).

The Texas Supreme Court, in *Ortiz*, however, recently held that an "insurer's payment of [an appraisal] award . . . bars the insured's common law and statutory bad faith claims to the extent the only actual damages sought are lost policy benefits." *Ortiz*, 589 S.W.3d at 129. *See also Menchaca*, 545 S.W.3d at 499–500 ("[A]n insurer's statutory violation does not permit the insured

to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits.").

To the extent that the plaintiffs seek to recover for mental anguish or emotional distress and other unspecified damages, they cannot without establishing an independent injury apart from the contract claim.[6] Because there is no proffer of evidence that supports independent injury, no genuine issue of material fact regarding such claims is raised.

### 2.      The Plaintiffs' Prompt Payment Claim

Travelers moves for a summary judgment on the plaintiffs' prompt payment claim, alleging that it made a reasonable pre-appraisal payment on the plaintiffs' claim in compliance with The Texas Prompt Payment of Claims Act ("TPPCA").  The plaintiffs respond that payment of the appraisal award, alone, does not entitle Travelers to judgment as a matter of law. The TPPCA imposes numerous requirements on insurers, including the requirement that an insurer pay an insured's claim within 60 days of receiving all items and documents reasonably necessary to resolve the claim.  *See Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 258 (5th Cir. 2017), *as revised* (Sept. 27, 2017) (citing Tex. Ins. Code § 542.058).

The plaintiffs allege that Travelers violated Section 542.058(a) of the Act by delaying payment of the plaintiffs' dwelling and loss of use benefits by more than 60 days after Travelers received all items, statements, and forms reasonably requested and required.

---

[6] The Texas Supreme Court has implied that mental anguish caused by an insurer's bad faith conduct could satisfy the independent-injury rule. *Menchaca*, 545 S.W.3d at 499 (citing *Twin City Fire Ins. Co.*, 904 S.W.2d at 666). By contrast, exemplary damages and attorney's fees or costs incurred in prosecuting a suit against an insurer are not an independent injury. *Twin City*, 904 S.W.2d at 665; *Ortiz*, 589 S.W.3d at 135. The Court declined to decide whether "appraisal costs or sums related to pre-appraisal damage assessments" would be "independent from the loss of policy benefits and thus recoverable under *Menchaca* and prior case law." *Id.*

###### a.       Travelers' Payment of Loss of Use Benefits

The plaintiffs have not raised a genuine issue of material fact concerning Travelers' compliance with Section 542.058(a). Between October 19, 2017 and May 11, 2018, Travelers made three loss of use payments to plaintiffs totaling $24,446.33.[7] The uncontroverted evidence shows that through at least January 24, 2018, Travelers repeatedly requested additional information regarding the plaintiffs' dwelling damage claim and, by extension, their loss of use claim. Notably, Travelers paid the plaintiffs an additional $22,210.89 on January 23, 2020, eight days after receiving the additional documentation. The plaintiffs have not directed the Court to evidence otherwise. Therefore, the plaintiffs' TPPCA claim does not survive summary judgment.

###### b.       Travelers' Payment of Property Damage Benefits

The plaintiffs' TPPCA claim based on delayed payments for damage to the Property also cannot survive summary judgment. In *Mainali*, the Fifth Circuit held that no statutory violation of the TPPCA occurs if an insurer's pre-appraisal payment is reasonable. 872 F.3d at 259. The Court finds Travelers' pre-appraisal payment reasonable as a matter of law. Further, all of the evidence supports the conclusion that Travelers complied with the TPPCA by responding to the claim, requesting necessary information, investigating, evaluating, and reaching a decision on the claim, *Barbara Technologies Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 823 (Tex. 2019) (citing *Mainali*, 872 F.3d at 258–59). Accordingly, Travelers is entitled to judgment as a matter of law on the plaintiffs' claim for violation of the TPPCA.

---

[7] Travelers paid $13,868.01 on October 19, 2017, $2,644.58 on February 8, 2018, and $7,933.74 on May 11, 2018. These payments covered the plaintiffs' additional living expenses from the period of July 4, 2017 through March 16, 2018.

V.     **CONCLUSION**

Based on the foregoing analysis and discussion, Travelers' motion for summary judgment

is **GRANTED**.

It is so **ORDERED**.

SIGNED on this 28th day of September, 2020.

Kenneth M. Hoyt
United States District Judge